UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:16-cv-00383-MOC

| | |
|---|---|
| **FELICIA L. PEGG,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the court on plaintiff's (#9) and defendant's (#13) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each Motion, the court enters the following findings and Order.

### FINDINGS AND CONCLUSIONS

**I.  Administrative History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and for Supplemental Security Income (SSI) benefits due to a purported disability on November 6, 2012, alleging an onset of disability on October 19, 2012. Her claims were denied at the initial and reconsideration levels of administrative review. (Tr. 132-174, 178-186). Administrative Law Judge Ann Paschal ("ALJ") conducted a hearing during which the testimony of the plaintiff and the testimony of vocational expert ("VE") was taken. On July 1, 2015, the ALJ issued a written determination and found that the plaintiff was not disabled under the Act during the period at issue (October 19, 2012 to July 1, 2015) (Tr. 29). Plaintiff requested a review of this hearing decision on July 14, 2015.

(Tr. 56). This request was denied by the Appeals Council on September 26, 2016. (Tr. 1). Therefore, the ALJ's decision dated July 1, 2015 became the final decision of the Commissioner.

Having exhausted her administrative remedies, plaintiff commenced this action under Section 205(g) of the Social Security Act seeking judicial review of the ALJ's decision. See 42 U.S.C § 405(g). Commissioner filed a Motion for Summary Judgment (#13) in response.

## II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without

> remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The court finds that the ALJ's decision was supported by substantial evidence.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that meets or equals a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity (RFC), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### C. The Administrative Decision

At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 19, 2012, the alleged onset date. (Tr. 62). At Step Two, the ALJ found the plaintiff had the following severe impairments: status post right calcaneal fracture, obesity, status post lumbar compression fractures, post-traumatic arthritis subtalar joint, migraine headaches, and depression. (Tr. 62). At Step Three, the ALJ found the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 303, Subpart P, Appendix 1. (Tr. 63-64).

Upon review of the record, the ALJ found that the plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ found that the plaintiff was capable of occasionally lifting/carrying twenty pounds; frequently lifting/carrying ten pounds; standing or walking six hours of an eight-hour workday, and sitting six hours of an eight hour workday. (Tr. 65). The ALJ found that plaintiff was limited to occasionally climbing stairs, balancing, stooping, kneeling, crouching, and crawling, but she should avoid exposure to dangerous machinery and unprotected heights. (Tr. 65). Plaintiff was also limited to occasional public contact. (Tr. 65). The ALJ also restricted her RFC to occasional use of her right foot and leg for operating foot controls and for pushing or pulling. (Tr. 65).

At Step Four, the ALJ determined that the claimant could not perform her past relevant work. (Tr. 72). At Step Five, the ALJ found, considering the plaintiff's age, education, work experience, and RFC as well as the testimony of the VE, there were jobs that exist in significant numbers in the national economy that the plaintiff could perform. (Tr. 72). Consequently, the ALJ found the plaintiff has not been under a "disability" from October 19, 2012, the alleged onset date, through July 1, 2015, the date of the ALJ's decision. (Tr. 73-74).

**D. Discussion**

The court has closely read plaintiff's memorandum of law supporting her Motion for Summary Judgment (#10). Plaintiff has made the following assignments of error:

I. The ALJ did not perform a full function-by-function analysis of the nonexertional mental functions associated with Plaintiff's mental impairments; and
II. The ALJ rejected the opinions of Plaintiff's treating physician without giving good reasons for doing so.

(#10) at 5. Plaintiff's assignments of error will be discussed *seriatim.*

### 1. Function-by-function analysis of nonexertional mental functions

Plaintiff asserts the ALJ erred in her assessment of the plaintiff's non-exertional capacity, alleging the ALJ did not make a complete mental RFC assessment as required by SSR 96-8p. (#10) at 5. SSR 96-8p provides that the "[RFC] assessment must include a narrative discussion describing how the evidence support each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 61 Fed. Reg. at 34, 475). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted with the medical and other evidence." S.S.R. 96-8p, 1996 WL 37184, at *7. Remand may be appropriate where "an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Mascio, at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2nd Cir. 2013) (per curiam).

Plaintiff's argument is two-fold. First, plaintiff asserts that the ALJ did not make a finding as to her ability to stay on task. (#10) at 6. Second, plaintiff furthermore asserts that the ALJ failed to provide both a detailed assessment of the effect of her difficulties in social functioning on her ability to engage in sustained work activities under SSR 96-8p, as well as an explanation of the effect of her restrictions in activities of daily living on her ability to engage in work activity. (#10) at 9-10.

As to plaintiff's first argument, she asserts that the ALJ did not adequately address her ability to stay on task. Plaintiff alleges that, as in Mascio, the ALJ did not ascertain claimant's ability to stay on task for an entire workday. (#10) at 7. While plaintiff heavily relies on Mascio,

that case is readily distinguishable here. In Mascio, the court determined remand was appropriate because that while the ALJ held that the claimant could perform certain functions, he "said nothing about Mascio's ability to perform them for a full workday," despite conflicting evidence in the record on that point. Id. Mascio is distinguishable here, as the record demonstrates that the ALJ sufficiently explained the determination that plaintiff retained the ability to stay on task and her ability to perform those tasks for a full workday. As noted in the ALJ's opinion, "There is no indication the claimant is unable to maintain attention and concentration sufficiently long enough to permit completion of task[s] commonly found in work settings." (Tr. 64). The court is not left to guess as to the foundation of this finding. Taking note of plaintiff's testimony, the ALJ discussed that the plaintiff did not describe limitations attributable to her alleged mental health impairments. (Tr. 64). Specifically, the ALJ discussed that plaintiff did not testify to difficulties maintaining concentration, persistence, and pace when performing her normal activities of daily living. (Tr. 64). Although plaintiff did testify that her pain made her think "slower," the ALJ noted that plaintiff also stated her difficulties thinking and concentrating are limited to only one hour of the day. (Tr. 66).

As to plaintiff's second argument concerning social functioning and work activities, the record demonstrates that the ALJ did provide a detailed assessment of plaintiff's alleged difficulties in social functioning. First noting a lack of evidence regarding difficulty getting along with others, altercations, social isolation, or avoidance of personal relationships, the ALJ found that there was "no indication the claimant is unable to maintain appropriate social relationships." (Tr. 63-64). Likewise, the ALJ reviewed the plaintiff's own testimony concerning the extent of the impact of her mental health impairment on her activities of daily functioning. As noted by the

ALJ, the only impact plaintiff's testimony revealed was that her depression made her upset when going out in public. (Tr. 63, Tr. 115). Further, the ALJ reviewed further testimony about the percentage of a typical day that plaintiff felt like she had difficulty thinking and concentrating. The ALJ noted that plaintiff testified that this difficulty lasted for approximately one hour per day. (Tr. 66, Tr. 114). Though plaintiff did testify that her pain symptoms made her think slower, she did not describe any limitations related to her mental health impairments. (Tr. 64). Plaintiff did not testify to difficulties maintaining concentration, persistence, and pace when performing her normal activities of daily living. (Tr. 64).

Ultimately, it is the court's task to determine whether the ALJ's opinion was supported by substantial evidence and whether the ALJ satisfied her obligation of referencing the evidence which supported the opinion. This court can neither re-weigh the evidence nor go in search of unreferenced evidence that would support the ALJs determination. Upon review of the final decision of the Commissioner, the ALJ adequately reviewed the extant record, including mental health examinations, claimant testimony, and other materials, to provide support for the RFC. The court is not "left to guess" as to how the ALJ arrived at her conclusions.

### 2. Rejection of Treating Source Opinions

#### a. Rejection of Dr. Gillis' Medical Opinions

Plaintiff asserts that the ALJ did not identify the evidence that counseled her conclusion that Dr. Gillis' medical opinions were unsupported. (#10) at 13. Plaintiff further alleges that the ALJ failed to construct a logical bridge from the evidence to her conclusion, pursuant to Monroe v. Colvin, 826 F.3d 176 (4th Cir. 2016). (#10) at 13. Instead of connecting the evidence to her conclusion, plaintiff asserts that the ALJ provided nothing more than unsupported conclusory

statements with no bridge to supporting medical evidence or opinions. (#10) at 13.

Contrary to plaintiff's assertion, the ALJ identified at length numerous items from plaintiff's own testimony which she found to be inconsistent with Dr. Gillis' opinion. Plaintiff testified that she spent her days as the primary caregiver for her 7-year old son and 3-year old daughter. (Tr. 66). While Dr. Gillis opined that plaintiff can never crawl, and only occasionally balance and crouch, plaintiff testified that she has no trouble caring for her daughter during the day while also cleaning the house by performing such tasks as sweeping, mopping, doing laundry, and cooking meals such as grilled chicken, mashed potatoes, and hotdogs. (Tr. 66). While Dr. Gillis assessed extreme limitations in plaintiff's ability to understand and remember and carry out detailed instructions, plaintiff testified that she performed the grocery shopping for her household, and drove her son to the bus stop and picks him up daily. (Tr. 66). Plaintiff bathed her 3-year old and made her meals, and denied any trouble taking care of her daughter. (Tr. 66). Plaintiff's pain was treated conservatively with non-narcotic medications, and after the removal of the hardware in her ankle, she has been full weight bearing since 2014. (Tr. 69). Plaintiff denied problems walking, and in January of 2015, stated that she was doing Zumba. (Tr. 69).

The ALJ also compared Dr. Gillis' opinion to the opinion provided by Dr. Pyle, the Disability Determination Services physician. (Tr. 68-69). Dr. Pyle opined that plaintiff is capable of: "occasionally lifting/carrying 20 pounds; frequently lifting/carrying 10 pounds, standing or walking six hour of an eight hour workday." Unlike Dr. Gillis' opinions, the ALJ concluded that the opinions of Dr. Pyle "appear consistent with the overall evidence which shows the [plaintiff] returned to full weight bearing status shortly after her motorcycle accident." (Tr. 69). The ALJ found several specific items from the record which supported Dr. Pyle's opinion. The ALJ noted

that after the removal of hardware from plaintiff's heel, plaintiff's pain symptoms improved. (Tr. 69). Furthermore, the ALJ noted that although plaintiff initially sought treatment for back pain, she was treated conservatively and did not seek additional treatment until 2015. (Tr. 69). Finally, the ALJ found that despite plaintiff's back pain, she was able to lift twenty pounds occasionally, which is consistent with the evaluation performed by Dr. Pyle. (Tr. 69). Accordingly, the ALJ gave "great weight" to the opinion of Dr. Pyle. (Tr. 69).

Plaintiff next alleges that the ALJ failed to provide good reasons for rejecting treating physician Dr. Gillis' opinions. (#10) at 13. Specifically, plaintiff alleges that the ALJ improperly discredited Dr. Gillis' opinions because they were largely based on plaintiff's description of her own symptoms. (#10) at 13. Plaintiff contends that physicians normally consider their patients' reports of their own symptoms and more weight should be provided to plaintiff's subjective reports of her own symptoms. (#10) at 13. However, as this District has held, "Medical opinion evidence largely based on subjective statements should not be given any significant weight." Martin v. Colvin, No. 1:15-CV-203-GCM, 2016 WL 3514299, at *3 (W.D.N.C. June 27, 2016) (citing Bishop v. Comm'r of Soc. Sec'y, 584 Fed. App'x 65, 67 (4th Cir. 2014)).

The ALJ afforded less weight to the limitations assessed by Dr. Gillis as they appeared to be based largely on plaintiff's subjective reports of her own symptoms. (Tr. 69). In her review of the record, the ALJ evaluated Exhibit 27-F, Dr. Gillis' medical source statement, which appears on pages 883-888 of the record. (Tr. 71). In this exhibit, Dr. Gillis' findings, by the doctor's own admission, are largely supported by no other objective clinical test or diagnostic beyond "patient stated." (Tr. 883-888). For instance, when evaluating plaintiff's ability to engage in various postural activities such as crouching or balancing, Dr. Gillis hand-wrote "patient stated" as the

-10-

sole objective clinical finding which supported her findings. (Tr. 884). When evaluating plaintiff's ability to engage in various physical functions such as reaching or pushing/pulling, Dr. Gillis again indicated "patient stated" as the sole objective clinical finding that supported her opinion. (Tr. 884). When determining various environmental conditions to be avoided by plaintiff, such as moving machinery or heights, Dr. Gillis once more indicated "patient stated" as the only objective clinical finding to support her opinion. (Tr. 884). The ALJ also noted that lacking from each of these answers provided by Dr. Gillis are specifics explaining the restrictive limitations which the ALJ found were not supported by the medical record. (Tr. 69).

Lastly, Plaintiff alleges that the ALJ did not identify the specific mental status examinations ("MSE") contained in Dr. Gillis' records which supposedly contradict the limitations Dr. Gillis assessed. (#10) at 13-14. Inapposite to plaintiff's assertion, however, the ALJ discussed several MSEs found in the record which do not support Dr. Gillis' assessments. The ALJ noted that the June 10, 2013 MSE revealed no evidence of depression, anxiety, or agitation and cites specifically to Exhibit 10-F. (Tr. 70, 619). The ALJ also discussed the September 25, 2014 MSE, which revealed no depression, anxiety, or agitation—and cites to Exhibit 12-F. (Tr. 71, 711). The ALJ also discussed the January 2014 MSE, citing exhibit 12-F, which revealed a flat affect. (Tr. 70, 695). The ALJ also noted Dr. Englebrecht's MSE from April 22, 2014, citing to Exhibit 20-F, which stated that plaintiff's affect was appropriate and her cognitive function was normal. (Tr. 71, 822).

### b. Rejection of Dr. Pardoll's Medical Opinions

In considering the weight to allocate to a particular medical opinion, the following factors are considered: (1) examining relationship; (2) treatment Relationship; (i) length of the treatment

relationship; (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; (6) other factors. See 20 C.F.R. § 404.1527(c), 416.927(c). An ALJ is qualified to determine whether a medical opinion is consistent with the record as a whole.

Plaintiff ontends that the ALJ did not give legally sufficient reasons for rejecting the opinions of Dr. Pardoll, but rather relied upon her own interpretation of the medical data to support her conclusion. (#10 at 14). Specifically, plaintiff alleges that the ALJ failed to identify the MSE's upon which she relied in rejecting Dr. Pardoll's opinion, and failed to cite any other medical opinion in support of her rejection of Dr. Pardoll's opinion. (#10 at 15). As a result, plaintiff asserts the ALJ failed to provide a bridge from the evidence to her conclusion. (#10 at 15).

Contrary to plaintiff's assertion, ALJ did not categorically reject Dr. Pardoll's opinions, but rather afforded the GAF of 53 offered by Dr. Pardoll "great weight" as it assessed only moderate limitations on functioning, which the ALJ found to be consistent with the record. (Tr. 71). However, the ALJ did not find that the specific limitations assessed by Dr. Pardoll were supported by other evidence in the record. (Tr. 71). Specifically, the ALJ noted that Dr. Pardoll's opinions were inconsistent with plaintiff's ability to act as the primary caregiver of her two young children, and that the MSEs in medical evidence consistently showed no evidence of depression, anxiety, or agitation. (Tr. 71). Pursuant to 20 C.F.R. § 404.1527(c), 416.927(c), the ALJ properly found, and substantial evidence supports the ALJ's finding that, Dr. Pardoll's opinions lacked support and consistency with the other medical and testimonial evidence in the record.

**E. Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's

assignment of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment (#9) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment (#13) is **GRANTED;** and

(4) This action is **DISMISSED**.

Signed: August 21, 2017

Max O. Cogburn Jr
United States District Judge